IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUSTIN EVERETT,

    Plaintiff,

v.

FIELDWORKS, INC., LAURA BARKLEY, ZACHARY REIDER, CHRIS GALLAWAY and LEWIS GRANOFSKY,

    Defendants.

Civil Action No. 2:17-cv-01495-PJP

FILED

APR 09 2019

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## Preface:

I have decided to add an opposing statement of opposing facts, which I believe starts on page 6. This is a list of exhibits that end the statement.

Exhibit One: Statute that prohibits quotas
Exhibit Two: List of Fieldworks Liberal Democratic Party Clients
Exhibit Three: News article about warrants and investigations
Exhibit Four: Copy of Fieldsworks Exhibit that claims I have duplicate registrations but doesn't prove it. Or show it.
Exhibit Five: Zappala says voter registration quotas are against the law.

We are making some amendments here under Rule 15, which states that a party may amend its pleading once as a matter of course within 21 days after serving it. I have also asked my friend and fellow co plaintiff Philip Shropshire to help me type this, in that he is a fast typist and claims to know what an Oxford comma is, whatever that happens to be.

1

# I. AMENDED GENERAL STATEMENT AND RESPONSE TO DEFENDANT'S VARIOUS BRIEFS

Well the first thing I'm going to say is that the clerk's office assured me that I could answer all of the various Defendant's motions -- material facts, legal basis behind their complaint, etc -- by March 19th so that's what I intend to attempt. Also we reserve the right to amend our completed brief under The Rules of Federal Civil Procedure. I believe I'm allowed to up to 21 days in order to add information or legal information I wasn't aware of when I turned this in. Which is pretty much all legal information as I'm learning this on the go and between jobs.

**A. No Evidence Shown That I Produced Duplicate Voter Regisrations**: It should be stated first that they've provided no evidence, whatsoever, that I provided duplicate registrations, aside from, of course, the duplicate registrations that our bosses continuously asked us to get for people that wanted to get a Voter ID card for work identification purposes and/or because they didn't have a Voter ID and they weren't sure if they were registered or not. The evidence they've provided so far doesn't actually prove their case and, in fact, helps mine more. It should also be noted, while Fieldworks is guilty of many kinds of pretext, one specific kind is that a jury can determine is that if defendant lies about the work record of his own employee, or doesn't allow the employee to look at his "crimes" (I still haven't been shown the exact "duplicate" registrations that they say I produced. Those include phone numbers, social security numbers, etc...It's been almost three years.) then the jury can infer an illegal reason such as

2

race was the real reason. That's exactly one reason why juries awarded millions to two local plaintiffs and victims of racial and age discrimination. Working people tend not to like it if you have to lie about why you were fired from a job.

1.) **<u>Some third circuit case law defining pretext</u>**. The case that best defines our theory was articulated in Cherie Hugh vs. Butler County Family YMCA Third Circuit 2005, where it states:

> **Second, when the YMCA terminated Hugh, she was told that she was being terminated for poor performance, specifically for canceling a meeting, not wearing appropriate attire to a meeting, and failing to order a new sign for the program. Prior to her termination, Hugh was never approached regarding these problems. In addition, Hugh presents evidence that these reasons are not entirely supported by the record, including evidence that Hugh had made alternate arrangements for the meeting, which was ultimately cancelled by her supervisor, and evidence that Hugh did order the new sign, but it had not yet been delivered.**
>
> **Thus, as Hugh has presented evidence supporting the reasonable inference that the YMCA's reasons for her termination are pretextual, there are issues of fact regarding the reasons for Hugh's termination. Viewing the evidence in Hugh's favor, there is far more than a scintilla of evidence supporting her claim that she was terminated for discriminatory reasons. Accordingly, it is proper for a jury to view this evidence and resolve whether Hugh was terminated for reasons based on her performance or based on discriminatory motives.**
>
> **For the reasons stated above, the District Court erred in granting summary judgment for the YMCA based on the finding that Hugh had not proven a prima facie case. The District Court's grant of summary judgment will be reversed and the case will be remanded to the District Court for proceedings consistent with this opinion...**

Likewise, the only claim against me is that I produced "duplicate registrations". It must be pointed out that the state statute doesn't prohibit "duplicate registrations", which I'm not guilty of, but quotas which the entirety of the Fieldworks team is guilty of. If that was a violation of the law, then you would be criminalizing thousands of Pennsylvania voters who register to vote because they're not sure they're registered or because they haven't yet received a voter identification card. We also feel that this is a clear case of pretext and that a rational fact finder could determine that race was a motivating factor under both

3

disparate treatment and disparate impact theories of racial discrimination. I had received nothing but praise for my work up until the day I was fired!

**B. We Disagree With Their Statement of Material Facts:** Generally, we accept some of the events in the case that they've detailed. We don't actually accept pretty much any of their legal conclusions. Some of their material facts actually aren't facts and aren't material (It actually isn't against the law in Pennsylvania to register someone more than once. But it is definitely against the law to use quotas for pecuniary gain something that everyone who worked for Fieldworks will tell you that they've done, including me and several of the people I've gotten statements from. This seems to be missing from their "facts".) We believe that the jurisdiction for the parties is valid under pretty much under both general and specific doctrines of jurisdiction. (The PA law states a "single act", not to mention doing business in the state, paying state taxes, and renting property also would seem to meet the standard as well.) We believe that Section 1981 allows a broad definition of both personal and professional liability for pretty much everyone that works for Fieldworks. (See below for our full list of material facts in opposition to the defendants in this our amended pleading.)

**C. Rule 56 Inappropriate Before Discovery Completed Or Any Discernible Facts Presented (Such as evidence of duplicate voter cards, which my bosses asked for.)** Finally, it is completely improper to file a Rule 56 motion before discovery has been completed, or even started. While I'm confident that we can present a fairly comprehensive case in front of a jury, it's pretty much impossible to create such an argument without discovery. I have not seen the duplicate registrations they allege that I turned in. We can't conclude that they were even mine until we look at their

database and inspect it thoroughly. We don't know why Joel Bracy was fired as well. Joel also wasn't allowed to see the "proof" of his crimes. We haven't seen what white canvassers produced and whether they had to make the quotas that black workers had to make or whether they were also discharged for the duplicate voter registrations that they say black workers were fired for. We need to see those computer records. We're going to inspect them and certainly ask for a copy. Or would unless our case is cancelled before we have a chance too.

**Conclusion:** I just want to end on one more point that didn't quite fit in earlier but we would like the court to ask: Why would I have to cheat? Yes its true that black people were fired, completely illegally under PA state law if they didn't make 15 per day, but I was averaging 20 a day. In other words they allege about eight times that I provided duplicate registrations (Never proven. This should be stressed.) but there's no explanation as to how that's a violation of PA state law, which oddly enough they forget to quote in full, or how that would help my numbers, which it wouldn't. So, if we're to believe defendants, and their silly story, I allegedly created duplicates illegally, even though my boss told me to get duplicate registrations for employee id purposes, to help my 20 per day average, which I didn't need, as one of the best canvassers in the state, to help perpetrate voter fraud which I couldn't do! Someone who registers to vote at the same address can't do voter fraud. They just can't. These are bad arguments that Defendant's lawyers are making and we hope they're rejected and treated as such.

We may amend this pleading under Rule 15 as we research the case law further. Thank you.

**Plaintiff's Statement of Opposing Material Facts.**

1. Plaintiff is an African American male who lives in Allegheny County.

2. Justin Everett was promoted to team leader because of his excellence at attaining voter registrations which he did through sheer hard work or approaching up to 200 people per day in the downtown Pittsburgh area. He was hired by an African American named Joel Williams. The office was anywhere from 90 to 95 percent black. After Zachary Reider arrived, anywhere from a half to a third of the staff was fired for reasons which still haven't been explained to some of us.

3. Someone paid money to Fieldworks to register voters but its not clear who and we hope that discovery clears it up. Historically, Fieldworks has been employed by liberal groups, just check their website (See Exhibit Two), particularly their clients page you find that its filled by names such as AFL CIO, ACLU, Michigan Democratic Party, National Democratic Council, Nevada Democratic Party, Planned Parenthood, and Democratic National Committee. The site claims this is a partial list.

4. Defendants tend to have cyclical employment within the state of Pennsylvania. They ran an office in 2016 and also ran another Philadelphia

office in 2018. It would be surprising if they didn't open up an office in Pennsylvania in 2020 during a presidential election year.

5. During my tenure at Fieldworks he was never told that he had a problem with creating "duplicate registrations". In fact, Zachary Reider encouraged him to apply for work after they left in October. Fieldworks actually has operations year round somewhere in the United States. And if you're willing to travel you can work all over the country.

6. "Duplicate registrations" have never been against the PA statute on voter registrations. We can't find any prosecutions or arrests of canvassers or of organizations for the crime of "duplicate registrations", period. (Or at least we couldn't find any.) It should be pointed out that not only would this put canvassers at risk but the general public as well that simply wanted to register again simply because they hadn't received their voter ID cards and they weren't sure if they were registered to vote or not.

7. Allegheny County District Attorney Stephen Zappala has made it clear that organizations that use "quotas" for voter registration drives are in violation of Pennsylvania's statute on voter registrations. (See exhibit five.) Everyone who worked for Fieldworks, and who is honest, will tell you that Fieldworks used quotas. And no I don't understand why ACORN was good enough to be prosecuted for this but Fieldworks isn't.

8. Canvassers were also asked to get "duplicate registrations". Canvassers were told by all managers, including Joel Williams, Zachary Reider and Laura Barkley, to use the reason of attaining a voter's registration card as an

7

employee Identification card to get people to register to vote. It can sometimes be difficult for people to attain documents for worker identification. In other words, canvassers were asked to get "duplicate registrations" by management.

9. Fieldworks should have a copy of every registration that was created by Fieldworks staff. It was the canvasser's responsibility to take a picture of every voter registration card that they attained. In other words, if I had created "duplicate registrations", then Fieldworks should have the full copy of said "duplicate" voter registrations.

10. Fieldworks has not produced evidence of "duplicate" voter registrations into this record. These would be the original voter registration cards, that have names, phone numbers and social security numbers. The "evidence" they have produced (see their exhibit 3, our exhibit 4) doesn't even prove that I did those registrations because we haven't seen the original database, which would tie my output to whatever output they're using to claim that I created "duplicate" registrations, which of course management asked for. Even if true.

**Statement of Material Facts and Also Statements of Disputed or Triable Facts**

11. As a general counter to material facts 10 through 17 offered by Defendants on February 15th, 2019, and possible issues of triable facts, it should be stated that A: They in fact tolerated multiple instances of how they define fraud in that the "evidence" they produced shows violations as early

8

as June in their exhibit three and our exhibit four. I was fired in September. That's not zero tolerance. B: Duplicate registrations are not in themselves evidence of fraud. C: Under theories of Disparate Impact a policy can be facially neutral and still be discriminatory. D: The exhibit they produce, namely their exhibit three and our exhibit four, doesn't prove "duplicate registrations". They have photocopies of the original voter registrations. That would be proof of the Defendant's allegations, but not unlawful under the Pennsylvania voter registration statute.

12. As a general counter to Defendant's material facts 18 through 28, and possible issues of triable facts, it should be stated that A: These particular graphs would seem to prove the 7th circuit's Cat's Paw theory which under Section 1981 determines every employee that had a hand in the termination decision can be held liable. This is the same policy in effect in the Third Circuit. B: We presume that both Granofsky and Gallaway approved the policies that led to my termination. Therefore, they bear both personal and professional liability. C: It was my understanding that the team leaders could be rotated and therefore could be either black or white depending on the day. D: Its very hard to complain of discrimination when Fieldwork's managers are encouraging you to apply for other positions.

13. As a general counter to Defendant's material facts 29 through 55, and possible issues of triable facts, it should be stated that A: The location of where current defendants live now has nothing to do with jurisdictional issues here in Pennsylvania that relies on just one incident, as opposed to the hundreds of incidents that Fieldworks was involved in. B. It's also not relevant with who Fieldworks replaced me with. Replacement theory is not

necessary in civil rights complaints based on race. C.) While this has been stated before, I registered almost 2000, or more, it wouldn't have helped or changed my daily numbers to have cheated in such a fashion. I simply didn't have to cheat to get numbers. Their arguments make no sense.

14. Finally, it should be pointed out, specifically about their exhibit 3, that A: Their exhibit three and our exhibit four doesn't prove "duplicate registrations" but merely claims it. We can't be certain because we haven't seen the full voter registration cards, which Fieldworks made us photograph with our cell phones but won't show us now. B: While there is a list of about 12 or so "duplicate registrations" I am cleared of wrongdoing at least six times (see notes on the right hand side that says things like "appears to have moved" and "not the same people".) for legitimate reasons as to why people redo their voter registration cards such as different addresses and different names. It looks like I'm cleared at other times as well but the information has been blacked out. C: Without an inspection of the database there's no way to know that these people were registered by Justin Everett. We need to see and inspect that database and those registration cards for ourselves.

15. Both state and local law enforcement authorities have raided various Fieldworks offices in the eastern part of Pennsylvania in 2016. However, there haven't been any arrests made that we know of. But I, Justin Everett, will be happy to testify in any criminal proceeding against Fieldworks. (See exhibit three.)

**Certificate of Service**

I certify that on the 6th day of April 2019 this statement was emailed or mailed to the Defendant's lawyers and a copy was either mailed or delivered to the clerk's office.

Signature: *[signed]*
Date: April 9, 2015

Exhibit One

## § 1713. Solicitation of registration.

**(a) Prohibition.**--A person may not give, solicit or accept payment or financial incentive to obtain a voter registration if the payment or incentive is based upon the number of registrations or applications obtained.

**(b) Penalty.**--A person who violates subsection (a) commits a misdemeanor of the third degree and shall, upon conviction, be sentenced to pay a fine of not less than $500 nor more than $2,500 or to imprisonment for not less than one month nor more than one year, or both.

Exhibit Two

### Clients

*Partial Client List*

- ACLU
- AFL-CIO
- AFSCME
- Alliance for a Better Maryland (AFT, MD)
- Alliance for Climate Protection
- American Association of University Women
- American Immigration Lawyers Association
- American Jewish World Service
- Arizona Democratic Party
- Arizona Families United for Strong (Arizona Min Wage)
- Ballot Initiative Strategy Center (BISC)
- Blueprint NC
- California Democratic Party
- CASA De Maryland
- Center for Community Change
- Colorado Civic Engagement Roundtable
- Colorado Committs to Kids
- Colorado Conservation Voters Victory Fund
- Colorado Families for a Fair Wage
- Colorado League of Responsible Voters
- Connect for Health Colorado
- Consumers Union
- Council of Chief State School Officers (CCSSO)
- Our Oregon/Defend Oregon
- Democratic GAIN
- Democratic National Committee
- Democratic Senatorial Campaign Committee
- Diana DeGette for Congress
- Eleanor Roosevelt Legacy Committee
- Electrification Coalition
- EMILY's List
- Environmental Defense Action Fund
- Equality Maryland
- Everytown for Gun Safety
- For Our Future
- Fraser for Senate
- Future PAC
- Garden State Equality
- Grassroots Campaigns, Inc.
- Grassroots Interactive
- Hillary Clinton for President
- The Joint Emergency Campaign for Choice
- Kansas Democratic Party
- Kentucky Democratic Party
- Kitzhaber for Governor
- League of Conservation Voters
- Maine Moms Demand Action for Gun Sense Fund
- Mid-Atlantic Regional Organizing Committee
- Maryland Democratic Party
- Maryland NARAL
- Massachusetts's Teachers Association
- Mi Familia Vota
- Michigan Democratic Party
- Missourians for Health and Education
- Jim Moran for Congress
- National Democratic Council
- National Education Association
- National Jewish Democratic Council
- National Parks Conservation Association
- Nevada Democratic Party
- New Voter Project
- New York State Democratic Committee
- North Dakota Democratic-NPL
- Ohioans for Healthy Families
- Oregon Democratic Party
- Oregon Says I Do
- Our Oregon
- Patriot Majority
- Planned Parenthood
- Progress Ohio
- Progressive Future
- Protect Colorado's Future
- Recall Walker
- Save Darfur Coalition
- Save Outdoor School for All
- She's Changed PAC
- Sierra Club
- SEIU
- SEIU Local 49
- Smart Growth America
- Southern Utah Wilderness Alliance
- State Voices
- Susan G. Komen for the Cure
- Tobacco Free Kids
- UNITE HERE
- United Food and Commerical Workers
- University of California Berkeley, Haas School of Business
- Utah Democratic Party
- Utah Education Association
- VA House & Senate Democratic Caucuses
- Voters First
- Washington Ballot Initiative Network
- Washington United for Marriage
- Western Energy Project
- The White House Project
- Workers Voice
- Working America (AFL-CIO)
- Working Washington
- Young Democrats of America
- 21st Century Democrats



Exhibit Three (Article about Fieldworks raids.)

https://www.apnews.com/8f44c39733b4449ea68209e8d9c714f5

State police on Thursday widened their investigation of possible voter registration fraud in Pennsylvania, raiding the Philadelphia office of a grassroots organization that works with Democrats, while election officials in the suburbs questioned the validity of thousands of last-minute applications submitted by the company.

The state probe involves voter registrations gathered by Washington, D.C.-based FieldWorks LLC, a 15-year-old company that has worked with a wide range of Democratic and progressive groups around the country.

State police arrived at FieldWorks' Philadelphia office with a search warrant Thursday night, less than a week after raiding the company's location in suburban Delaware County, The Philadelphia Inquirer reported. In court papers, agents said they were looking for evidence of "fraudulent voter registration forms."

The Delaware County Voter Registration Commission, meanwhile, scheduled a hearing for Friday to determine whether applications gathered by FieldWorks were submitted by an Oct. 11 state deadline to register for next week's election. The applications were rife with errors, election officials said.

"We are trying to get to the bottom of whether these should be on the (voter) rolls or not," Delaware County Solicitor Michael Maddren said Thursday.

FieldWorks submitted 7,000 voter registration applications to the Pennsylvania Department of State, which sent them in batches to Delaware County on Oct. 14 and 17 without providing any evidence they had been turned in on time, Maddren said.

"We have a real issue on our hands," he said. "We've asked the Department of State to appear and explain themselves" at the commission hearing.

Department of State spokeswoman Wanda Murren insisted FieldWorks had submitted the applications by Oct. 11.

14

"If they were not timely received or postmarked, we would not send them to any county," she said in a statement.

While Friday's hearing will focus on the applications' timeliness, FieldWorks also faces questions about its canvassers.

An ongoing review by Delaware County election officials has revealed problems with hundreds of applications, from addresses that don't exist to Social Security numbers or driver's license numbers that don't match. Some voters were registered multiple times — one woman appeared on nine applications.

A warrant obtained for last week's state police search in Delaware County noted agents were looking for "any templates (physical or electronic) utilized to construct fraudulent voter registration forms," and evidence the same voters appeared on multiple registration forms.

In a statement issued before the Thursday raid, FieldWorks spokesman Matt Dorf said the company "has the most rigorous quality controls in the industry and zero tolerance for fraud."

FieldWorks is cooperating with local officials and "will work aggressively with authorities to seek the prosecution of anyone involved in wrongdoing," he said.

The apparent irregularities had Republicans crying foul.

Republican U.S. Rep. Patrick Meehan, whose district includes Delaware County, wrote to the U.S. Department of Justice on Thursday to demand an investigation of FieldWorks.

Some of the applications "are not only clearly suspect, but they are criminal," Meehan said in an interview.

Authorities have not said whether they believe there was an attempt to influence election results, or whether the irregularities were the work of paid canvassers looking to inflate their numbers and thus their paychecks.

Records show Democrats have been more successful than Republicans in registering voters in Delaware County this election cycle. More than 20,000 people have either newly registered to vote as Democrats or changed their party affiliation to Democrat this year, compared with fewer than 12,000 new Republicans, state statistics show.

As a result, Democrats have expanded their registration edge to nearly 18,000 in the county of 413,000 voters.

It's not clear who FieldWorks has been working for in Philadelphia and Delaware County. Nationally, its clients include the Democratic National Committee, statewide Democratic Party organizations, unions and abortion-rights groups.

Exhibit Four (Fieldworks alleged "Proof".)

| Date | Name | Address | DOB | Note |
|---|---|---|---|---|
| 7/17/2016 | Alex Randolph | 557 N AIKEN AVE | 3/26/1992 | |
| 7/14/2015 | Alex Randolph | 557 N AIKEN AVE. | 3/26/1992 | |
| 7/5/2016 | Anthony Simon | 1534 Brighten Place Apt 2 | 12/23/1997 | |
| 8/10/2016 | anthony simon | 1534 brighton place | 12/23/1997 | |
| 6/22/2016 | Brianna Aiken | 169 PENTORI ST | 11/9/1990 | registered at po box second time |
| 7/14/2016 | Brianna Aiken | p.o box 99502 | 11/9/1990 | |
| 6/10/2016 | Daniella Peterson | 230 Phillips Ave | 1/29/1995 | |
| 7/25/2016 | daniella peterson | 230 phillips ave | 1/29/1995 | |
| 6/29/2016 | Lamont Davis | 7715 Bennett St | 7/12/1930 | |
| 7/28/2015 | Lamont Davis | 7715 Bennett St | 7/12/1930 | |
| 7/11/2016 | Lemuel Jackson | 7317 Finance St | 12/26/1995 | |
| 7/25/2016 | lemuel jackson | 7317 finance st | 12/26/1995 | |
| 6/29/2016 | Montez Wilson | 2600 Wilner Dr | 11/13/1996 | |
| 7/28/2016 | Montez Wilson | 2630 Wilner Dr | 11/13/1996 | |
| 6/17/2016 | Shampali Richards | 130 East Agnew Ave | 7/2/1908 | |
| 8/3/2015 | SHAMPALI RICHARDS | 130 E AGNEW AVE | 7/2/1908 | |
| 7/28/2016 | Shanice Harris | 431 PARK AVE | 3/25/1992 | |
| 8/9/2016 | Shanice Harris | 635 Hatman St | 3/25/1992 | |
| 7/8/2016 | Tyler Hogan | 598 Hawkins Ave | 4/24/1992 | |
| 7/14/2016 | Tyler Hogan | 598 hawkins ave | 4/24/1992 | |
| 7/18/2015 | Amanda Williams | 242 Friendship ave | 1/16/1995 | registered 6 days apart |
| 8/18/2015 | Amanda Williams | 1025 Verbina Ave. | 5/12/1988 | not the same people |
| 7/4/2016 | Contrina Perkins | 247 ROCHELLE ST 1 | 5/28/1968 | appears to have moved |
| 8/20/2016 | Contrina Perkins | 2607 Jenny Lane. | 5/28/1968 | |
| 6/6/2016 | Jeffrey Mason | 345 FOURTH AVE | 3/15/1997 | not the same people |
| 8/18/2015 | Jeffrey Mason | 203 Singer Ave | 11/2/1965 | |
| 8/4/2016 | Jordael washington | 267 freidel st | 5/23/1997 | 12 days between registration |
| 8/16/2016 | Jordael washington | | 5/23/1997 | |
| 7/27/2016 | Leonard Brooks | 1208 wood st | 8/26/1990 | |
| | Leonard Brooks | 1208 Wood St | 8/26/1990 | |
| 7/25/2016 | Tyler Polk | 201 w 9th ave | 4/22/1995 | |
| | Tyler Polk | 201 W 9TH AVE | 4/22/1995 | |
| 6/30/2016 | William Harrison | 809 Montooth St | 1/15/1985 | were registered the second time, on th... |
| | William Harrison | 809 Montooth | 1/15/1985 | |

17

Exhibit Five: Post Gazette story where Zappala claims that quotas are illegal.

https://www.post-gazette.com/news/politics-local/2009/05/07/ACORN-workers-charged-with-forging-voter-registrations/stories/200905070417

**DENNIS B. RODDY**
Pittsburgh Post-Gazette

MAY 7, 2009

10:15 AM

Allegheny County District Attorney Stephen A. Zappala Jr. today charged seven employees of ACORN -- the left-leaning Association of Community Organizations for Reform Now -- with forgery and election law violations, saying they filed hundreds of fraudulent voter registrations during last year's general election.

Mr. Zappala said there is no indication that any of the fraudulent registrations resulted in fraudulent votes. Rather, it appeared the workers were submitting fake or doctored registration forms in order to be paid their daily $40 wage.

The forgery counts -- 51 in all -- are third-degree felonies, the most serious of the charges brought, Mr. Zappala said during a press conference today.

Mr. Zappala said his office is currently in talks with some of the defendants and he indicated that the investigation could expand. In all, ACORN claimed to have registered 38,000 voters in Allegheny County last year, he said.

At present, he said, he has strong indications that a quota system, which is a misdemeanor in Pennsylvania, was in place in the ACORN registration drive here.

Charged were:

Ashley Lucille Clarke, 21, of Pittsburgh with forgery, solicitation of registration for pay, unsworn falsification of authorities, obstructing the administration of law or government function, interference with voter registration, and impersonating another person in a voter registration application.

Alexis M. Givner, 23, of West Mifflin, forgery, solicitation, unsworn falsification, obstruction, interference and impersonation.

Mario Wyatt Grisom, 28, of Pittsburgh, with forgery, solicitation, unsworn falsification, obstruction, interference and impersonation. Mr. Zappala said Mr. Grisom solicited a county elections office employee for a registration. The person filled out the form with everything but a name and social security number by way of testing what would happen, according to elections director Mark Wolosik. The form was later submitted by ACORN with a forged signature and false social security number.

Latasha Leann Kinney, 27, no address listed, forgery, solicitation, unsworn falsification, obstruction, interference and impersonation.

Eric Eugene Jordan, 19, of Pittsburgh, solicitation for pay and interference. He is accused of filing three applications in his own name in order to meet his daily quota.

Eric Lee Jones, 20, of Pittsburgh, forgery, solicitation, unsworn falsification, obstruction and interference. He is accused of filing 30 fraudulent applications.

Bryan Williams, 22, of McKeesport, obstruction and interference. Mr. Williams is accused of filing 22 registration applications in his own name -- including 19 in 2008 alone -- apparently to meet his daily quota.

He said at least one of the ACORN registration workers had been fired from the group in 2006 for submitting fraudulent registrations, but was hired for last year's drive.

Two of the workers charged today were already in custody. Mr. Jordan was served his warrant at the Allegheny County Jail, where he is being held on DUI and gun charges. Mr. Williams, officials said, was served his summons at a halfway house.

The charges are part of a continuing investigation of ACORN, which has been targeted for election fraud in several other states where similar, fake voter registrations were filed by hourly employees apparently attempting to meet daily registration quotas in order to be paid.

In some states -- including Pennsylvania -- registration quotas are illegal. In Nevada, which has a similar statute, the state attorney general on Monday charged ACORN, its former Nevada field director and former regional director for voter registration with filing thousands of "garbage" registrations in order to meet an illegal daily quota of 20 new voters.

ACORN officials have denied those charges.

More details in tomorrow's Pittsburgh Post-Gazette