# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN EVERETT, | ) |
| | ) |
| Plaintiff, | ) 2:17-cv-01495-NR |
| | ) |
| vs. | ) |
| | ) |
| FIELDWORKS, LLC, et. al. | ) |
| | ) |
| Defendants, | ) |

## OPINION

Ranjan, J.

Before the Court are two Show Cause Orders [ECF 101, ECF 105] issued by Judge Peter J. Phipps[1] on June 10, 2019 and June 11, 2019, respectively. Both Show Cause Orders were issued by Judge Phipps following Plaintiff's failure to appear at the June 10, 2019 jury trial scheduled in this matter. [ECF 100].

Following reassignment of the case, it now falls to this Court to decide what sanction, if any, is warranted by Plaintiff's failure to appear. For the reasons below, the Court will dismiss Plaintiff's claims with prejudice, but decline to impose monetary sanctions.

## I.   Background

This is a *pro se* employment discrimination claim brought under Title VII of the Civil Rights Act of 1964. Plaintiff Justin Everett alleges that he was fired from his job as a field canvasser for Defendant Fieldworks LLC ("Fieldworks") because of his race or gender. [ECF 4]. Defendants deny the allegations, [ECF 13], and contend that Plaintiff was instead terminated after he "committed voter registration fraud by registering the same people over and over again." [ECF 46 at 4]. After summary judgment, only Plaintiff's race discrimination claims against Defendants Fieldworks and Zachary Reider remain. [ECF 65].

On April 24, 2019, following the issuance of an order granting in part and denying in part Defendants' motion for summary judgment [ECF 65], Judge Phipps entered a second pretrial order scheduling a jury trial on Plaintiff's remaining claims for June 10, 2019. [ECF 67]. Judge Phipps also scheduled a final pretrial conference for June 3, 2019. [ECF 67].

On May 21, 2019, Judge Phipps held a telephonic status conference, which Plaintiff attended. [ECF 81]. The minute entry memorializing the status conference states that the "[t]rial

---

[1] The case was reassigned to this Court on August 6, 2019, by order of Chief United States District Judge Mark R. Hornak. [ECF 110].

1

schedule [was] discussed" and further notes that "[t]he Motion for Reconsideration of [the] Court's April 24th Judgment, ECF No. 70, will not alter the trial schedule." [ECF 81].

Following the status conference, Judge Phipps rescheduled the final pretrial conference for May 31, 2019. [ECF 81, ECF 83]. The pretrial conference was held on that date, with Plaintiff again in attendance. [ECF 99]. During the conference, Judge Phipps discussed multiple trial-related matters with the parties, including Plaintiff's witness list, Plaintiff's testimony, jury selection, trial time limits, and proposed *voir dire*. [ECF 99]. The corresponding minute entry states: "Trial will commence Monday, June 10, 2019 at 9:30 AM. Parties are directed to appear for any pretrial matters at 8:30 AM." [ECF 99].

On Friday, June 7, 2019, just three days before trial was scheduled to begin, Plaintiff filed a "Motion to Stay Proceedings Until Pending Notices of Appeal Are Completed." [ECF 93]. In the first paragraph of his motion, Plaintiff wrote:

> 1. It turns out that my work requires my presence on June 10th and I will not be able to attend jury selection or the "trial," scheduled bizarrely on the same day. I was going to ask for a continuance but I realize this is part of a bigger problem. Oh, and just for the record, I don't own a yacht or a trust fund. I can't take off work whenever I want to. I'm a wage earner though I'm relatively poor compared to my financial needs. I can provide the work schedule if the court requests. (Just found out Thursday the 6th).

[ECF 93 at ¶ 1].

The remainder of Plaintiff's motion requested that the Court extend discovery, and argued that Plaintiff "still h[adn't] received one shred of evidence that the thing I was allegedly fired for, 'duplicate [voter] registrations,' even exists." [ECF 93].

On that same day, June 7, 2019, Judge Phipps issued an order denying Plaintiff's motion to stay and stating, in relevant part:

> The trial in this case is set to commence in three days – on Monday June 10, 2019. The date has been set since April 24, 2019. The final pre-trial conference in this case occurred on May 31, 2019, and the parties were informed of all trial procedures, and they had an opportunity to raise all objections, but the trial date has remained firm. Plaintiff's newly-asserted inability to take off work for trial is not a justification for rescheduling trial at this time; 36 potential jurors have been summoned to attend court on Monday, June 10, 2019, for potential juror service in this case.
>
> …
>
> Under these circumstances, plaintiff's failure to appear at trial on Monday will trigger a range of potential sanctions, from monetary sanctions to dismissal of his case for failure to prosecute.

[ECF 96].

To ensure that Plaintiff would receive the order, Defendants' counsel served a copy of the order to Plaintiff's residence, at Defendants' expense, on Saturday, June 8, 2019. [ECF 98].

On June 10, 2019, notwithstanding Judge Phipps's order and accompanying warning, Plaintiff failed to appear at the scheduled jury trial. [ECF 100]. Defense counsel and Defendants' witnesses timely appeared at 8:30 AM, along with 33 prospective jurors. [ECF 100; ECF 105]. Due to Plaintiff's absence, the jury was dismissed at approximately 10:15 AM. [ECF 100]. Defendants then presented an oral motion to dismiss for failure to prosecute. [ECF 100].

After dismissing the jury, Judge Phipps issued two Show Cause Orders. The first, [ECF 101], directed Plaintiff to "show cause by June 24, 2019, why the above-captioned matter should not be dismissed with prejudice for his failure to appear and to prosecute the jury trial this day, June 10, 2019." The second, [ECF 105], directed Plaintiff to "show cause by June 25, 2019, why he should not be obligated to refund the costs of $2,401.95 to the United States of America that were unnecessarily incurred due to his non-appearance at the jury trial in this matter." Judge Phipps separately issued a Sanction and Bill of Costs Notice, [ECF 102], directing Defendants to file a bill of their own costs by June 24, 2019. Defendants did so, identifying $2,136.63 in witness costs incurred in connection with the trial. [ECF 107].

Both parties then filed responses to the Show Cause Orders. [ECF 106, ECF 108]. Plaintiff's response contained a litany of personal attacks directed at Judge Phipps, who consequently ordered that it be sealed on the docket as an "abusive document." [ECF 108]. Plaintiff stated in his response that he did not appear for trial because he had to work, and argued that Judge Phipps was at fault for failing to reschedule the trial. [ECF 108] ("As soon as I found out on Thursday [June 6, 2019] what my schedule would be … I told the court to reschedule. You had a full three days to cancel and reschedule. Please don't try to pin the costs on me. I gave you plenty of time to make other arrangements. You had three days. Take some responsibility for your own actions.").

On August 9, 2019, the Court received additional correspondence from Plaintiff. [ECF 111]. In this letter, Plaintiff requested that the case "be reset to the discovery phase and all post discovery motions, and errant trial dates, would be reset as well." [ECF 111]. Plaintiff further stated that "[t]his case is a joke without [additional discovery]." [ECF 111]. On August 16, 2019, Plaintiff re-filed the same correspondence, now styled as a "Motion to Enforce Order for Discovery." [ECF 112]. The Court construes this as a motion to reopen or reset the discovery period, which is addressed by the Court's order.

No further submissions have been received. With both parties now having had a full and fair opportunity to respond to the pending Show Cause Orders, the matter is ready for disposition by the Court.

## II.     Discussion & Analysis

"Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders." Knoll v. City of Allentown, 707 F.3d 406, 409 (3d Cir. 2013); *see* Fed. R.

3

Civ. P. 16(f), 37(b)(2), 41(b). This includes the authority to dismiss a case based on a party's failure to prosecute its claims or defenses. *See* Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-31 (1962) (discussing inherent authority to dismiss cases for lack of prosecution); Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 871 (3d Cir. 1994) ("The Supreme Court affirmed [in *Link v. Wabash R.R. Co.*], stating that a court could dismiss *sua sponte* under Rule 41(b)."); Karpiel v. Ogg, Cordes, Murphy & Ignelzi, L.L.P., The Firm, 405 F. App'x 592, 595 (3d Cir. 2010) ("Under Fed. R. Civ. P. 41(b), a district court may dismiss an action *sua sponte* if a plaintiff fails to prosecute her case.").[2]

When evaluating the appropriateness of dismissal as a punitive sanction for failure to prosecute, the Third Circuit has instructed district courts to balance the six factors in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Poulis, 747 F.2d at 868; *see also* Bradshaw v. Karpinski, No. CV 14-5583, 2017 WL 1163890, at *3 (E.D. Pa. Mar. 28, 2017).

These factors do not provide the Court with a "magic formula" for determining whether dismissal is appropriate. Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008). In conducting the required balancing, "no single *Poulis* factor is dispositive." Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003). Conversely, "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992); *see also* Adegbuji v. Middlesex Cty., 347 F. App'x 877, 881 (3d Cir. 2009) ("[W]e have never required complete satisfaction of each Poulis factor in order to justify the sanction of dismissal."). "Instead, the decision must be made in the context of the district court's extended contact with the litigant." Mindek, 964 F.2d at 1373.

Accordingly, while dismissal "must be a sanction of last, not first, resort," Poulis, 747 F.2d at 869, a district court's decision to order dismissal as a punitive sanction is entitled to "great deference." Mindek, 964 F.2d at 1373. As the Third Circuit has recognized, district courts "cannot, and should not, tolerate unjustifiable delays and the expenditure of irreplaceable judicial resources caused by litigants, *pro se* or represented, who will not obey court orders." Id.

With these principles in mind, the Court will consider and apply the *Poulis* factors in the context of this case.

**1.** **Personal Responsibility.** The first *Poulis* factor focuses on whether the party has personally failed to comply with the court's orders, as opposed to whether counsel for the party

---

[2] In addition to the Show Cause Orders issued by Judge Phipps, Defendants made an oral motion for dismissal following Plaintiff's non-appearance at the scheduled jury trial. [ECF 100].

is responsible. "As a general rule, a *pro se* litigant is responsible for his failure to comply with court orders." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011); *see* Briscoe, 538 F.3d at 258–59 ("[I]t is logical to hold a *pro se* plaintiff personally responsible for delays in his case because a *pro se* plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney.").

Here, Plaintiff is proceeding *pro se*, and there is no question that he is personally responsible for his failure to appear at trial. Plaintiff failed to abide by explicit court orders directing him to appear on June 10, 2019, [ECF 67, ECF 81, ECF 83, ECF 96, ECF 99], including Judge Phipps's June 7, 2019 order, which unequivocally denied Plaintiff's last-minute motion to stay the trial and warned that "failure to appear at trial on Monday will trigger a range of potential sanctions, from monetary sanctions to dismissal of his case for failure to prosecute." [ECF 96].

Accordingly, the Court finds that the first *Poulis* factor weighs in favor of dismissal.

**2.     Prejudice.** Evidence of prejudice to an adversary will "bear substantial weight in support of a dismissal or default judgment." Adams, 29 F.3d at 873–74. A finding of prejudice does not require "irremediable harm." Ware, 322 F.3d at 222. For example, "[a]n inability to prepare 'a full and complete trial strategy is sufficiently prejudicial.'" Hildebrand v. Allegheny Cty., 923 F.3d 128, 134 (3d Cir. 2019). Prejudice also includes "unnecessary financial burdens imposed because of Plaintiff's misconduct." Smith ex rel. El Ali v. Altegra Credit Co., No. 02-cv-8221, 2004 WL 2399773, at *6 (E.D. Pa. 2004); *see also* Derzack v. Cty. of Allegheny, Pa., 173 F.R.D. 400, 415 (W.D. Pa. 1996), *aff'd sub nom.* Derzack v. Cty. of Allegheny Children & Youth Servs., 118 F.3d 1575 (3d Cir. 1997) ("[Prejudice] can consist of the extra costs of repeated delays in filing of motions necessitated by the improper behavior on the part of plaintiffs.").

Here, Defendants have unquestionably been prejudiced by Plaintiff's failure to appear at trial. Specifically, Defendants expended time and incurred substantial costs in preparing their case, arranging for witnesses to travel and testify, ensuring service of the Court's denial of Plaintiff's motion to stay over a weekend [ECF 98], and attending the scheduled trial. [ECF 106; ECF 107]; *see, e.g.* Karpiel v. Ogg, Cordes, Murphy & Ignelzi, L.L.P., The Firm, 405 F. App'x 592, 595–96 (3d Cir. 2010) (refusal to proceed on date of trial "would have prejudiced [the defendant], particularly given that they were prepared to try the case that day and apparently had arranged for independent witnesses to testify."); Al–Torki v. Kaempen, 78 F.3d 1381, 1385 (9th Cir. 1996) ("Failure to appear for trial, without excuse, prejudices an adversary and interferes with the court's docket about as much as any procedural default can. The other side is likely to have spent thousands of dollars getting its lawyers ready to try the case and arranging for witnesses and exhibits to be available."); In re Moore, 532 B.R. 614, 622 (Bankr. W.D. Pa. 2015) ("[I]t cannot be said that Mr. Mentzer's failures were without a financial cost to Mr. Lalone, who presumably incurred legal fees associated with attending the January 16, 2015 evidentiary hearing at which Mr. Mentzer failed to appear[.]"); Huertas v. City of Philadelphia, 139 F. App'x 444, 446 (3d Cir. 2005) ("[W]e agree … that the Defendants suffered substantial prejudice in scheduling and holding five depositions, all of which Huertas failed to attend."); Smith ex rel. El

Ali, No. 02-cv-8221, 2004 WL 2399773, at *3 ("Failure to attend scheduled pretrial conferences is one circumstance that can justify a sanction of dismissal.").

More generally, Plaintiff's failure to appear at trial undermined the orderly administration of justice and resulted in the "expenditure of irreplaceable judicial resources." Mindek, 964 F.2d at 1375. More than 30 prospective jurors were summoned away from their lives and jobs, likely at great inconvenience, to ensure that Plaintiff would have his day in court. Judge Phipps and his staff undoubtedly expended significant time and resources preparing for trial, as well. *See* Al–Torki, 78 F.3d at 1385 ("The judge is likely to have gone to considerable trouble to clear out time from criminal cases, motion hearings, work in chambers, and other matters, for the civil trial. In many cases ... jurors and witnesses will have been put to great inconvenience."); Lewis v. Rawson, 564 F.3d 569, 581 (2d Cir. 2009) ("The concerns underlying these decisions are only heightened once a civil jury has been selected and sworn."); Watts v. Blake-Coleman, No. CV 2011-61, 2013 WL 3338588, at *3 (D.V.I. 2013) ("Watts's failure to attend status conferences and the trial wasted the time of [defendant], the Magistrate Judge, and the Court.").

For these reasons, numerous courts have concluded that "[i]t is beyond dispute … that a district court may dismiss a case under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial." Lewis, 564 F.3d at 580; *see* Adegbuji v. Middlesex Cty., 347 F. App'x 877 (3d Cir. 2009) (affirming dismissal for failure to prosecute based on Plaintiff's failure to appear at civil trial following deportation); Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 364 (6th Cir. 1999) ("Where a plaintiff does not appear at the trial date or … is inexcusably unprepared to prosecute the case, Rule 41(b) dismissal is particularly appropriate. Indeed, such behavior constitutes the epitome of a 'failure to prosecute.'"); Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) ("The remedy [of dismissal] is usually applied when the plaintiff is not ready for trial or fails to appear."); DuBose v. State of Minn., 893 F.2d 169, 171 (8th Cir. 1990) (affirming dismissal where plaintiff "did not appear for trial even though he had been informed of the trial date on three occasions."); Noli v. Comm'r, 860 F.2d 1521, 1527 (9th Cir. 1988) ("[D]ismissal for failure properly to prosecute will normally arise where a party fails to appear at trial[.]"); Wareham v. Pa. Dep't of Corr., No. 13-cv-0188, 2014 WL 5361547, at *5 (W.D. Pa. 2014) ("[F]ailing to appear at trial is a quintessential example of a failure to prosecute."); 9 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2370 at 389–95 & nn. 35–36 (3d ed. 2008) ("An action may be dismissed under Federal Rule 41(b) if the plaintiff, without offering some explanation that is satisfactory to the court, is not ready to present his or her case at trial or if the plaintiff refuses to proceed at the trial.").

In light of the above, the Court has little difficulty concluding that the second *Poulis* factor weighs in favor of dismissal.

    **3.**    **History of Dilatory Conduct.** The third *Poulis* factor requires the Court to review the plaintiff's broader history of dilatory conduct, if any. Here, as detailed above, Plaintiff's failure to appear at trial was itself an extraordinarily dilatory act that has substantially multiplied these proceedings and wasted judicial resources. Making matters worse, Plaintiff elected to respond to the Show Cause Orders by filing a document replete with inappropriate personal attacks on Judge Phipps. [ECF 108]. However, the Third Circuit has repeatedly

cautioned that "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe, 538 F.3d at 261.

While some of Plaintiff's other conduct during this litigation could arguably be described as dilatory—such as his initial failure to make timely service, [ECF 5], requests for multiple deadline extensions [ECF 35; ECF 41; ECF 39], filing of a 19-page sur-reply to Defendants' motion for summary judgment without leave of court [ECF 61], and apparent failure to seek discovery until the day of the close of the discovery period [ECF 80 at ¶¶ 17-18, Exs. F-G]—the Court is mindful of Plaintiff's *pro se* status and unable to say, from a review of the record, that Plaintiff has engaged in what would amount to a "history of dilatory conduct" during this litigation.

Accordingly, the Court finds that the third *Poulis* factor is, at most, neutral, and that, standing alone, it probably does not weigh in favor of dismissal.

**4.     Willful or Bad Faith Conduct.** The fourth *Poulis* factor asks whether the party's noncompliance with court orders was willful or in bad faith. "Willfulness involves intentional or self-serving behavior," Adams, 29 F.3d at 875, as opposed to conduct that is "merely negligent or inadvertent." Brown v. United States, No. 17-cv-1551, 2019 WL 764429, at *5 (E.D. Pa. 2019).

Here, there is clear evidence that Plaintiff's failure to appear at trial was intentional, rather than merely negligent or the result of any innocent confusion. The June 10, 2019, trial date was initially set almost two months prior, on April 24, 2019, when Judge Phipps issued a second pretrial order. [ECF 65]. The trial schedule was then repeatedly discussed with Plaintiff; first during a telephonic status conference held on May 21, 2019, [ECF 81], and then at the final pretrial conference held on May 31, 2019. [ECF 83].

Any doubt that Plaintiff was well-aware of this trial date is obviated by his last-minute filing of a motion to stay the trial on June 7, 2019; just three days (and only one business day) before proceedings were scheduled to begin. [ECF 93]. Nor can there be any doubt that Plaintiff knew his motion had been denied, and that he was provided with clear notice of the consequences of failing to appear. Indeed, Judge Phipps's order, issued the same day as Plaintiff's motion, was unequivocal in denying the requested stay and warning that "failure to appear at trial on Monday [would] trigger a range of potential sanctions, from monetary sanctions to dismissal of his case for failure to prosecute." [ECF 96].[3]

Plaintiff's failure to comply with Judge Phipps's pretrial orders in the face of "repeated warnings about the consequences of noncompliance" is, in and of itself, "sufficient evidence of 'flagrant bad faith' to warrant dismissal." Smith ex rel. El Ali, No. 02-cv-8221, 2004 WL 2399773, at *6. Certainly, it was an "intentional" choice. Adams, 29 F.3d at 875.

---

[3] Given the last-minute nature of Plaintiff's request, Judge Phipps was well within his discretion to deny the request for a stay of the trial date. *See, e.g.* Lewis, 564 F.3d at 577 ("[W]hen a party requests a trial adjournment of several weeks after a jury has been sworn, under circumstances that will require that jury to be dismissed and a new one empaneled, a district court acts well within its discretion in requiring strong justification for the adjournment.").

But Plaintiff's intentional failure to appear was also at least incidentally "self-serving," *id.*, if not a calculated strategic decision. While Plaintiff's motion—styled as a "Motion to Stay Proceedings Until Pending Notices of Appeal are Completed"—did briefly indicate that his inability to get off work was the basis for the requested stay, Plaintiff also suggested that this was "part of a bigger problem," and devoted the bulk of his motion to discussing various other reasons why he wanted to delay the trial. [ECF 93 at ¶ 1]. Among other things, Plaintiff referenced the following justifications for a stay: (1) "[T]he court's massive prejudice," [ECF 93 at ¶ 2]; (2) "Even if I were to show up on June 10th I don't have anything to present to a jury because I simply haven't been given enough time to complete discovery," [ECF 93 at ¶ 5]; (3) "There is no prejudice to either side as far as I can see by expanding discovery by 60 days," [ECF 93 at ¶ 8]; (4) "I still haven't received one shred of evidence that the thing I was allegedly fired for, 'duplicate registrations,' even exists." [ECF 93 at ¶ 10].

Given Plaintiff's obvious strategic interest in delaying the trial, the Court finds that his intentional failure to appear was also "self-serving," Adams, 29 F.3d at 875, even crediting Plaintiff's representation that he was unable to call off work (which the Court does credit for purposes of this analysis). Federal jury trials are serious business, and with nearly two months' notice to take any necessary action to ensure his availability for the trial date, Plaintiff's sudden inability to appear, revealed for the first time on the eve of trial, was plainly inexcusable.

Accordingly, the Court concludes that the fourth *Poulis* factor weighs in favor of dismissal.

**5. Effectiveness of Lesser Sanctions.** The fifth *Poulis* factor requires the Court to consider whether lesser sanctions might provide an adequate alternative to dismissal. Where lesser sanctions are adequate, the Court "should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits." Titus v. Mercedes Benz of North Am., 695 F.2d 746, 749 (3d Cir. 1982).

Here, the Court has carefully considered the possibility of imposing monetary sanctions on Plaintiff in lieu of dismissal. Such sanctions could, in theory, compensate Defendants and the United States for costs incurred due to Plaintiff's failure to appear. However, the Court is also mindful that "[a]s a general proposition … sanctions less than dismissal [are] ineffective when a litigant … is proceeding *pro se* and *in forma pauperis*." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011); *see* Briscoe, 538 F.3d at 262–63 ("[W]here a plaintiff is proceeding *pro se*, and moreover, is proceeding *in forma pauperis*, we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'"); Emerson v. Thiel Coll., 296 F.3d 184, 191 (3d Cir. 2002) ("Emerson proceeded *in forma pauperis* in District Court. We agree that monetary sanctions would not be an effective alternative."); Sloan v. Pitkins, No. 3:13-cv-104, 2017 WL 3575855, at *5 (W.D. Pa. 2017) ("[W]hen a plaintiff represents himself and is proceeding *in forma pauperis* … monetary sanctions would not be an effective alternative'.").

In light of Plaintiff's *in forma pauperis* status, [ECF 1; ECF 2], the Court finds that monetary sanctions are not an effective alternative. Specifically, the Court finds that Plaintiff

8

would likely be unable to pay any monetary sanction sufficient to compensate Defendants or the United States for costs incurred in connection with the June 10, 2019 trial.

As a result, the Court finds that the fifth *Poulis* factor also points toward dismissal. Separately, for this same reason, the Court will decline to impose the additional monetary sanctions contemplated by Judge Phipps's second Show Cause Order. [ECF 105].

**6.    Merits of Plaintiff's Claims.** The sixth *Poulis* factor asks whether the claims subject to potential dismissal are "meritorious." The standard for determining whether claims are meritorious "is moderate." Hildebrand v. Allegheny Cty., 923 F.3d 128, 137 (3d Cir. 2019). In effect, the Court must "use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Briscoe, 538 F.3d at 263; Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984) (court must evaluate "the meritoriousness of the claim[s] ... on the basis of the facial validity of the pleadings, and not on summary judgment standards."). As a result, "[a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff[.]" Hildebrand, 923 F.3d at 137.

In light of Judge Phipps's order denying Defendants' motion for summary judgment with respect to Plaintiff's remaining claims in this matter, [ECF 65], the Court cannot conclude that those claims are facially meritless as a matter of law. At a minimum, Plaintiff has submitted affidavits from two co-workers containing statements that, if presented in admissible form at trial and found credible by a jury, would provide at least some support for Plaintiff's claims. [ECF 55; ECF 56; ECF 65]; *see, e.g.* Briscoe, 538 F.3d at 263 ("In the present case, several of Briscoe's claims survived the summary judgment stage of litigation. Therefore, viewing the facts in the light most favorable to Briscoe, his claims presented genuine issues of material fact, necessitating a trial on the issues.").

Accordingly, the Court finds that the sixth and final *Poulis* factor counsels against dismissal. Under the circumstances, however, this factor does not warrant much weight in the final analysis. This is so because it would be improper for Plaintiff to "refuse to address the merits of his claims" by failing to appear at trial, and then "assert the untested merits of these claims as grounds for denying a motion to sanction him." Kamuck v. Shell Energy Holdings GP, LLC., No. 4:11-cv-1425, 2015 WL 1345235, at *12 (M.D. Pa. 2015).

**III.    Conclusion**

While *Poulis* "[does] not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation," Mindek, 964 F.2d at 1373, the Court concludes that, on balance, application of the *Poulis* factors discussed above establishes that dismissal with prejudice is warranted. The Court acknowledges that dismissal is a harsh sanction that should be deployed only in extreme cases, but this is just such a case. Indeed, Plaintiff's intentional failure to appear at trial, in defiance of a court order, "constitutes the epitome of a 'failure to prosecute.'" Knoll, 176 F.3d at 364; *see also* Moffitt v. Illinois State Bd. of Educ., 236 F.3d 868, 873 (7th Cir. 2001) ("One naturally expects the plaintiff to be present and ready to put on her case when the day of trial arrives. A litigant's day in court is the

culmination of a lawsuit, and trial dates—particularly civil trial dates—are an increasingly precious commodity in our nation's courts.").

More specifically, the Court concludes that at least four of the six *Poulis* factors—Plaintiff's personal responsibility, the prejudice to Defendants (as well as to the broader interests of justice), Plaintiff's willfulness and bad faith, and the ineffectiveness of lesser sanctions—weigh heavily in favor of dismissal, while two factors—history of dilatory conduct and the merits of Plaintiff's claims—are neutral on or weigh somewhat against such a sanction. After carefully balancing these factors on a whole, the Court is persuaded that the scales tip decidedly in favor of dismissal with prejudice. Accordingly, having already been subjected to the substantial burden of preparing for one trial, Defendants will not be subjected to another.

Separately, the Court will exercise its discretion to decline to impose the monetary sanctions contemplated by Judge Phipps's June 11, 2019 Show Cause Order [ECF 105]. As discussed above, the Court finds that such sanctions would be ineffective in light of Plaintiff's purported financial condition.

A corresponding order follows.

DATED: August 22, 2019   BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge